## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ALFRED BROOKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-18-1014-G** |
| | ) | |
| **MARIA ROBINSON et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Plaintiff Alfred Brooks brings this action under 42 U.S.C. § 1983, alleging that while he was incarcerated at North Fork Correctional Center ("NFCC") Defendants violated his Eighth and Fourteenth Amendment rights. The matter was referred to United States Magistrate Judge Gary M. Purcell for initial proceedings in accordance with 28 U.S.C. § 636(b)(1).

On June 22, 2020, Judge Purcell issued a Report and Recommendation ("First R. & R.," Doc. No. 48), in which he recommended that Defendants Shirley May and Jimmy Martin should be granted summary judgment because Plaintiff did not, prior to commencing this lawsuit, exhaust his available administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), codified in pertinent part at 42 U.S.C. § 1997e(a). Plaintiff submitted an objection ("Pl.'s First Obj.," Doc. No. 55) to the findings and conclusions of the First R. & R.

On November 19, 2020, Judge Purcell issued a Second R. & R. (Doc. No. 67), recommending that Defendant Maria Robinson should likewise be granted summary

judgment based upon Plaintiff's lack of exhaustion.  Plaintiff submitted an objection ("Pl.'s Second Obj.," Doc. No. 72).

Accordingly, the Court reviews de novo the portions of the R. & R.s to which specific objections have been made.  *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  Having conducted this de novo review, the Court finds as follows.

I.    *Background*

Plaintiff, a state prisoner appearing pro se, raises claims of deliberate indifference to his medical needs by NFCC officials in violation of his constitutional rights. Specifically, Plaintiff alleges that on March 28, 2017, Defendant Robinson, an NFCC certified medication aide, intentionally provided the wrong eye medications to him in retaliation for his refusal to disclose the identity of another inmate who had made disparaging remarks about Defendant Robinson.  *See* Compl. (Doc. No. 1) at 6-8.

Plaintiff states that the application of the medications resulted in further damage and loss of vision in Plaintiff's left eye, as well as internal bleeding and a decrease in pressure and volume, necessitating an emergency eye exam at Dean McGee Eye Institute ("DMEI"). *Id.* at 7-8 ("After six (6) days of applying medications Robinson issued to me . . . , my left eye was blind and extremely painful.").  Plaintiff also asserts that Defendant May, the NFCC Correctional Health Services Administrator, later refused to purchase the correct eye medication for him because it cost too much and initially refused to tell him the true basis of her refusal.  *See id.* at 9-10.  Plaintiff contends Defendant May failed to implement "medical policy[] Stop orders" that would have prevented Plaintiff from receiving the

wrong medication in March 2017.  *Id.* at 10-12.  Plaintiff additionally asserts Defendant May failed to report the March 2017 medication error, as required by ODOC medical policies.  *See id.* at 12-13.  Finally, Plaintiff contends that Defendant Martin, the NFCC Warden, failed to properly hire and supervise the NFCC medical staff.  *See id.* at 13-14.

In each R. & R., Judge Purcell addressed the relevant facts and record, the parties' arguments, and the applicable standards of review.  Judge Purcell concluded that Defendants' Motions seeking dismissal (Doc. Nos. 40, 58)[1] should be converted to requests for summary judgment with respect to Defendants' affirmative defense of lack of exhaustion.  Judge Purcell further evaluated Plaintiff's exhaustion efforts and found that, because Plaintiff had administrative remedies available to him but failed to complete all required steps to resolve his complaints internally prior to filing this lawsuit, summary judgment should be granted in Defendants' favor.  *See* First R. & R. at 8-15; Second R. & R. at 8-16.

## II.   *Summary Judgment*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor.  *Celotex Corp.*

---

[1] Plaintiff filed written responses to these Motions.  *See* Doc. Nos. 46, 66.

*v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury.  *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B).  While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."  *Liberty Lobby*, 477 U.S. at 252.

A defendant seeking summary judgment on the basis of an affirmative defense "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."  *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).  "If the defendant meets

this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact" as to one or more elements of the affirmative defense, absent which summary judgment must be granted in favor of the defendant. *Id.*

## III.   Discussion

Plaintiff does not object to the conversion of the pending Motions to requests for summary judgment or to Judge Purcell's characterization of Plaintiff's legal claims and recitation of the governing standards.  Plaintiff does object, however, to the summaries of his administrative exhaustion efforts and to the ultimate conclusion in each R. & R. that Plaintiff did not fulfil his obligations to exhaust.  Liberally construed, Plaintiff further argues that he was thwarted in his exhaustion efforts and that the errors of prison officials rendered the exhaustion process unavailable.  *See* Pl.'s First Obj. at 3-14; Pl.'s Second Obj. at 2-16.

Accordingly, the Court undertakes a de novo review of these aspects of Judge Purcell's recommendations.

### A.   Exhaustion of Administrative Remedies

The PLRA provides that no action under 42 U.S.C. § 1983 may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 219-20 (2007) ("All [courts] agree that no unexhausted claim may be considered.").

The PLRA requires "proper exhaustion of administrative remedies"—i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks

omitted).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91.

### B.  The Oklahoma Department of Corrections Grievance Process

ODOC has adopted an offender Grievance Process, OP-090124, through which an inmate in its custody may seek administrative decisions or answers to complaints.  *See* OP-090124 (eff. July 19, 2016).[2]  The ODOC Grievance Process requires an inmate initially to attempt informal resolution of his or her complaint by speaking to an appropriate staff member within three days of the relevant incident.  *See id.* § IV(B).  If the inmate is dissatisfied after this initial attempt, then he or she may submit a written "Request to Staff" within seven days of the incident.  *Id.* § IV(C).  This first informal level may be bypassed only if the complaint involves a sensitive topic or an emergency.  *See id.* § VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a grievance within 15 days of the date of the receipt of a response to a timely Request to Staff.  *See id.* § V(A)(1).  The grievance is submitted to the facility's Reviewing Authority,

---

[2] Defendants have filed a Special Report ("S.R.," Doc. No. 38) in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  To support their request for summary judgment, Defendants rely upon the version of OP-090124 included within the Special Report.  *See* S.R. Ex. 2 (Doc. No. 38-2) (OP-090124, eff. Oct. 18, 2017).  Plaintiff's exhaustion efforts commenced prior to the effective date of this version of the ODOC Grievance Process, however.  The undersigned therefore has taken judicial notice of the preceding version of OP-090124, which is publicly available and took effect July 19, 2016, to provide the general overview above.  Plaintiff's discrete applications for relief are considered with reference to the version in effect at the time each application was made.

defined as the "facility head or facility correctional health services administrator." *Id.* §§ I(D), V(B)(1). This level may be bypassed only if the grievance involves a sensitive topic concerning the Reviewing Authority. *See id.* § VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a grievance appeal. If dissatisfied with the response to a grievance, the inmate may file a grievance appeal within 15 days of the receipt of that response. *See id.* § VII(A), (B). The grievance appeal is submitted to the Administrative Review Authority ("ARA"), defined as the ODOC Director's designee or the ODOC Chief Medical Officer's designee. *See id.* §§ I(E), VII(B). A grievance appeal may be filed only upon the following grounds: (1) newly discovered/available evidence not considered by the Reviewing Authority; or (2) probable error committed by the Reviewing Authority such as would be grounds for reversal. *Id.* § VII(A). The ruling of the ARA is final and concludes the administrative remedy procedures available through ODOC. *Id.* § VII(D)(1).

### C. Plaintiff's Efforts to Exhaust His Remedies

As outlined below, the undisputed factual record reflects that Plaintiff submitted multiple grievance documents to prison officials raising complaints regarding his eye medication and related treatment at NFCC.

### 1. Grievance No. 17-28

On April 23, 2017, Plaintiff submitted a Request to Staff ("RTS") complaining that he had twice been issued the incorrect eye medication and asking for his prescribed medication. *See* S.R. Ex. 3 (Doc. No. 38-3) at 2-3.

On June 22, 2017, Plaintiff submitted Grievance No. 17-28, stating that he had not

received an answer to his RTS and asking that an answer be provided.  *See id.* at 4; *see also* OP-090124 § IV(C)(11).  The face of the Grievance reflects that Plaintiff erroneously directed the document to the ARA at ODOC rather than to the facility's Reviewing Authority.  *See* S.R. Ex. 3, at 4; OP-090124 § IV(C)(11) (prescribing that if there has been no response to an RTS the inmate may submit a grievance "to the reviewing authority").

On July 26, 2017, the ARA notified Plaintiff that it was extending the time to consider Plaintiff's Grievance.  *See* S.R. Ex. 3, at 5; *see also* OP-090124 § VII(B)(3).[3] Then on August 25, 2017, the ARA sent Plaintiff a letter stating that he was returning Grievance No. 17-28 unanswered due to its being improperly submitted—i.e., due to Plaintiff having sent the grievance to the ARA rather than to NFCC's Reviewing Authority. *See* S.R. Ex. 3, at 8; *see also* OP-090124 §§ IV(C)(11), V(A)(7), VI(B)(6).

Plaintiff appealed this disposition on August 29, 2017, arguing that he had in fact followed the required process.  *See* S.R. Ex. 3, at 9-10.  On October 2, 2017, the ARA returned the grievance appeal unanswered, stating that Plaintiff's own submissions showed that he had not properly submitted the grievance to the Reviewing Authority.  *See id.* at 11.

Pursuant to OP-090124, the ARA was authorized to reject Plaintiff's grievance appeal based upon the underlying grievance being "submitted improperly" or not being submitted "in accordance" with the Grievance Process.  OP-090124 §§ VII(B)(1)(e),

---

[3] On this same date, Plaintiff sent Grievance No. 17-28-2 to the ARA, pursuant to OP-090124 § V(C)(4), requesting a response to Grievance No. 17-28.  *See* S.R. Ex. 3, at 6. The ARA replied by letter and referenced this July 26, 2017 notice in stating that he had provided the sought-after response.  *See id.* at 7.  Plaintiff did not further pursue Grievance No. 17-28-2.

VII(B)(5).  Plaintiff was expressly advised by the ARA that he could "correct the errors within 10 days of receipt" of the ARA's letter and resubmit the appeal; however, Plaintiff did not attempt to correct or resubmit and did not further pursue this grievance.  S.R. Ex. 3, at 11; *see* OP-090124 § VII(B)(1)(e) ("The inmate/offender will be given one opportunity to correct any errors . . . . If the inmate/offender fails to correct the errors or properly resubmit, the grievance or grievance appeal will not be answered and the inmate/offender will have waived/forfeited the opportunity to proceed in the grievance process.").

### 2.  Grievance No. 17-53

On October 11, 2017, Plaintiff signed an acknowledgement of receipt of a written answer by Defendant May to Plaintiff's initial April 2017 RTS.  *See* S.R. Ex. 3, at 12.[4]  In this written answer, Defendant May stated that Plaintiff's requested medication "is non-formulary.  Dr. Thompson had ordered the med and is waiting for the approval."  *Id.* at 2.

Not satisfied with this disposition, on October 13, 2017, Plaintiff filed Grievance No. 17-53[5] regarding his medication and related problems with pharmacy records and protocols.  *See* S.R. Ex. 4 (Doc. No. 38-4) at 2.  In a written response dated November 2,

---

[4] Although Defendant May's answer is dated "5-4-17," the space provided on the RTS form to indicate "Date response sent to inmate" is blank and, as noted, Plaintiff had grieved the lack of a timely answer to the RTS.  S.R. Ex. 3, at 2.

[5] This Grievance is identified in the record as both "17-53" and "17-55."  Contrary to Plaintiff's allegations, *see* Pl.'s Second Obj. at 5-6, there is no indication that any misnumbering on his part negatively affected his efforts to gain relief.

2017,[6] the Reviewing Authority[7] (1) granted "Partial Relief," in the form of quoting the written RTS answer as to ordering and approving the medication, and (2) issued a "Partial Denial" based upon "[m]ore than one issue or incident" being included in Plaintiff's complaint. *Id.* at 3; *see* OP-090124 §§ V(A)(4), VI(B)(5).[8]

Plaintiff appealed this disposition on December 28, 2017, arguing that he had not raised multiple issues and asking that he be granted full relief on the grievance. *See* S.R. Ex. 4, at 4-5. On February 1, 2018, the ARA informed Plaintiff that his grievance was being returned to the Reviewing Authority "for further investigation and an amended response." *Id.* at 7; *see also id.* at 6; OP-090124 § VII(C).

On February 16, 2018, Plaintiff received an amended response from the Reviewing Authority, which noted that Plaintiff had been seen at DMEI on November 6, 2017, and granted "Partial Relief" on his requests. S.R. Ex. 4, at 8. The amended response expressly advised Plaintiff that he "may appeal" to the ARA and instructed how to do so. *Id.*

Plaintiff did not appeal or otherwise seek further relief via the Grievance Process.

---

[6] For reasons unexplained by the record, Plaintiff did not receive and sign for the Reviewing Authority's response until December 21, 2017. *See* S.R. Ex. 4, at 3. In the interim, he filed Grievance No. 17-116 seeking a response; the ARA sent him a letter on December 27, 2017, stating that the underlying grievance had now been answered. *See* S.R. Ex. 5 (Doc. No. 38-5) at 2-4. Plaintiff did not take any further steps on Grievance No. 17-116.

[7] As the facility's Correctional Health Services Administrator, Defendant May was also the Reviewing Authority and so was reviewing her own answer to the RTS. There is no indication, however, that the ARA, who "determine[d] the final resolution" of Plaintiff's complaints, was "directly involved" with his medication issues. OP-090124 § III(E).

[8] Though not material, the undersigned concurs with Judge Purcell's finding that "contrary to [the Reviewing Authority's] statement, Plaintiff did not raise more than one issue or incident" in Grievance No. 17-53. First R. & R. at 11 n.2.

10

### D. *Plaintiff's Failure to Exhaust*

To obtain summary judgment on their affirmative defense of nonexhaustion, Defendants must show that "administrative remedies were, in fact, available" to Plaintiff and that Plaintiff "failed to exhaust these remedies." *Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 726 (10th Cir. 2008). If Defendants make this showing, the burden shifts to Plaintiff to show a genuine dispute over whether "an administrative remedy, although officially on the books, [was] not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 648 (2016); *accord Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

#### 1. *Defendants' Showing*

As support for the requested entry of summary judgment, Defendants have submitted a sworn affidavit from the ODOC official who prepared the Special Report in this case. *See* Elliott Aff., S.R. at 11; *see also* Fed. R. Civ. P. 56(c)(4). This agency official states that the Special Report, which includes the cited records of Plaintiff's informal and formal administrative requests for relief, is true and correct to the best of his knowledge and information. *See* Elliott Aff. at 1; *see also* OP-090124 § X(B). Although Plaintiff disputes Defendants' contention that Plaintiff failed to exhaust his administrative remedies, he does not dispute the accuracy of this documentation.

Upon review of the arguments and evidentiary materials presented by the parties, the undersigned concludes that Plaintiff did not properly exhaust his available administrative remedies relevant to his constitutional claims. *See Purkey*, 263 F. App'x at 726; *Smith v. Jones*, 606 F. App'x 899, 901-02 (10th Cir. 2015). While the path was convoluted and, it appears, unnecessarily prolonged, Plaintiff ultimately received an

amended response on the merits of the medical-treatment complaints raised in Grievance No. 17-53.   Pursuant to the Grievance Process, Plaintiff was required to appeal this amended response to complete the required steps for administrative exhaustion.  *See* OP-090124 § VII(C)(4); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . .").  Plaintiff, however, did not file such an appeal or otherwise pursue any relevant grievance "in accordance with the applicable procedural rules" and through *all* available levels of administrative review prior to filing this lawsuit.  *Woodford*, 548 U.S. at 88; *see also* OP-090124 § VII(D)(1).  "[S]ubstantial compliance" with ODOC's "deadlines and other critical procedural rules" is not sufficient under the PLRA.  *Smith*, 606 F. App'x at 902; *Woodford*, 548 U.S. at 90.  Accordingly, Defendants have established, for summary judgment purposes, Plaintiff's failure to exhaust prior to filing this lawsuit.

### 2.  *Plaintiff's Showing*

Plaintiff objects that the officials erred in denying him relief on his complaints, and he correctly points out that the amended response to Grievance No. 17-53 informed him that certain of his requested remedies were unavailable.  *See* Pl.'s First Obj. at 5-8; Pl.'s Second Obj. at 10-15; *see* S.R. Ex. 4, at 8.  Plaintiff was required to seek relief through an appeal to the ARA, however, whether or not officials' rejections were well founded and despite any confusion about the process or any belief that it would have been futile.  *See Jones*, 549 U.S. at 218 (explaining that the review process is defined by the prison grievance procedure rather than the PLRA); *Burnett v. Jones*, 437 F. App'x 736, 741-42 (10th Cir. 2011) (holding that a failure to appeal under OP-090124 "compels the conclusion

that [the inmate] failed to exhaust his administrative remedies"); *Jernigan*, 304 F.3d at 1032 (noting that a prisoner must exhaust available remedies even when the effort appears futile); *Campbell v. Jones*, 684 F. App'x 750, 753 (10th Cir. 2017) (finding that inmate was required to appeal even when grievance was improperly rejected). Plaintiff did not do so. Because Plaintiff failed to pursue his complaints to the highest level of the Grievance Process, he failed to complete that process with respect to such complaints.

Further, Plaintiff's broad and unverified contentions of difficulty engaging in the Grievance Process—*see*, *e.g.*, Pl.'s First Obj. at 5 n.1 (arguing that "[t]he informal resolution process is null and void at NFCC")—do not establish obstacles that "rise to the level of effectively unavailable administrative remedies." *Smith*, 606 F. App'x at 902; *see* Pl.'s First. Obj. at 8-12; Pl.'s Second Obj. at 2-3, 6-10. The relevant officials' delays and lack of clarity, while troubling and no doubt frustrating, did not prevent Plaintiff from continuing to seek relief and thus do not create a genuine dispute over whether those officials thwarted or hindered Plaintiff's efforts in any material way. *See Ross*, 578 U.S. at 643; *Tuckel*, 660 F.3d at 1252-53; Fed. R. Civ. P. 56(c)(1); *cf. Smith v. Jones*, No. CIV-12-1365-HE, 2014 WL 5448890, at *1, *29 (W.D. Okla. Oct. 23, 2014) (finding that the ODOC Grievance Process was "not so complicated or convoluted" that the inmate's confusion or a lack of explanation from officials would justify bypassing its requirements), *aff'd*, *Smith*, 606 F. App'x 899.

Relatedly, prison officials "did not make the exhaustion process unavailable to [Plaintiff] by returning his documents unanswered." *Thomas v. Parker*, 609 F.3d 1114, 1118 n.2 (10th Cir. 2010). The ODOC Grievance Process expressly authorizes prison

officials to return grievances and grievance appeals unanswered if they find that the inmate failed to follow the procedural requirements. *See, e.g.*, OP-090124 §§ V(A)(7), VII(B)(1)(e).

The liberal construction afforded Plaintiff's pro se filings does not relieve Plaintiff from carrying his burden in opposing a motion for summary judgment. Plaintiff's submissions are insufficient to "demonstrate with specificity the existence of a disputed material fact" regarding his failure to exhaust. *Hutchinson*, 105 F.3d at 564; *see Tuckel*, 660 F.3d at 1254 (explaining that "[o]nce a defendant proves that a plaintiff failed to exhaust" "the onus falls on the plaintiff to show that remedies were unavailable to him"); Fed. R. Civ. P. 56(a), (c)(1). Nothing in Plaintiff's Objections rebuts the R. & R.s' clear explanation and application of the relevant law. Accordingly, the Court overrules Plaintiff's objections and concludes that Defendants' affirmative defense of nonexhaustion of administrative remedies is established as a matter of law. Summary judgment shall be entered in Defendants' favor on Plaintiff's constitutional claims.

CONCLUSION

For the reasons outlined herein, the Report and Recommendation issued June 22, 2020 (Doc. No. 48) and the Report and Recommendation issued November 19, 2020 (Doc. No. 67) are ADOPTED in their entireties. Defendants' Motions (Doc. Nos. 40, 58), construed as motions for summary judgment as to lack of administrative exhaustion, are GRANTED. A separate judgment shall be entered.

14

IT IS SO ORDERED this 29th day of March, 2022.

CHARLES B. GOODWIN
United States District Judge